CATHARINE WASMER, as Administratrix, etc., Respondent, *v.* THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY, Appellant.

He who knowingly maintains a nuisance is as responsible therefor as he who created it.

Defendant was operating as lessee the road of another railroad corporation, which was built under the act of 1850 (chap. 140, Laws of 1850). The road was laid through a street in the city of U., which was not restored to its former state as required by said act (§ 28, sub. 5), the rails being left projecting about four and one-half inches above the surface of the street, without any planking or filling between them. M., plaintiff's intestate, was peddling kindling wood in said street with a horse and wagon, which he left near the sidewalk while he stepped across the walk, about six feet from the wagon, to solicit a purchase. An approaching train frightened the horse, which ran diagonally across the railroad track. The hind wheel of the wagon caught upon and slid along the further rail. About the time the horse started, the attention of M. was called to the approaching train, then between 200 and 300 feet distant. He at once ran to catch his horse; he crossed the track, seized hold of the harness of the horse, when the engine struck the hind wheel of the wagon, and M., was thrown upon the track and killed. The rails in use at the time of the accident were laid by defendant. An ordinance of the city prohibited defendant from running its trains through the city at a rate exceeding eight miles an hour; the train was running about twelve miles an hour. In an action to recover damages, *held,* that the evidence justified a finding of negligence on the part of defendant, and of the absence of contributory negligence on the part of M.; that in the absence of proof that the horse was vicious, unsafe or unmanageable, it was not negligence *per se* for M. to leave his horse unfastened when he was near enough so that he might reasonably expect to control him, in an emergency, by his voice, or to reach him before he could escape; also, that it could not be said, as matter of law, that he violated an ordinance of the city which forbade any person leaving a horse in the street unless securely tied. Also *held,* that defendant could not escape liability for the condition of the road because it was lessee.

*It seems,* that even if M. was chargeable with negligence in leaving his horse in the street, this could not defeat the action, as such negligence was not in any proper sense the immediate or proximate cause of the accident. *Gray* v. *Second Ave. R. R. Co.* (65 N. Y., 561), distinguished.

(Argued February 3, 1880; decided February 24, 1880.)

APPEAL from the judgment of the General Term of the Supreme Court, in the fourth judicial department, affirming

Statement of case.

a judgment in favor of plaintiff entered upon a verdict, and affirming an order denying a motion for a new trial.

This action was brought to recover damages for alleged negligence causing the death of Mathias Wasmer, plaintiff's intestate.

The facts are substantially stated in the opinion.

*John D. Kernan*, for appellant.   The respondent should have been nonsuited, because she failed to show that the negligence of appellant was the sole and proximate cause of the death. (*Ryan* v. *N. Y. C.*, 35 N. Y., 40; *Griffin* v. *N. Y. C.*, 40 id., 34.)   The runaway horse and wagon was the proximate cause of the accident.   No negligence on the part of appellant caused the runaway.   It was attributable to Wasmer, whether negligent or not.   (*Wilson* v. *Sus. Turn. Co.*, 21 Barb., 68, 80, 81; *Cosgrove, admx.* v. *N. Y. C.*, 13 Hun, 329; *Titus* v. *Worthbridge*, 97 Mass., 258; *Fogg* v. *Nahant*, 98 id., 578.)   Under the circumstances of this case, the appellant would only be liable for wantonly and maliciously injuring Wasmer or his property.   (*Ton. R. R. Co.* v. *Munger*, 5 Denio, 267; *Ton. R. R. Co.* v. *Munger*, 4 Comst., 349, 359.)   Negligence, or failure to exercise care, is not synonymous with a wanton, malicious act.   (*Gardner* v. *Heartt*, 3 Denio, 236, 237, *Ton. R. R. Co.* v. *Munger*, 5 Denio, 267; *Deyo* v. *N. Y. C.*, 34 N. Y., 11.)   If an action for negligence can be maintained in such a case, it can only be for neglect to use the means at hand in trying to stop the train.   (*Owen* v. *H. R. R. R. Co.*, 35 N. Y., 516.)   The plaintiff's intestate was guilty of contributory negligence, both under the ordinance and at common law.   (*Utter* v. *N. Y. and Har. R. R. Co.*, 2 Keyes; *Gray* v. *Second Ave. R. R.*, 53 N. Y., 561; *Morris* v. *Kohler*, 41 id., 42; *Devillo* v. *The Southern Pacific Railroad Co.*, 12 Amer. Railway, 180; *Salter* v. *U. and B. R. R. R. Co.*, 75 N. Y., 273.)   Wasmer was guilty of contributory negligence in rushing after his horse.   (*Belton* v. *Baxter*, 54 N. Y., 235; *Ecker* v. *The Long Island R. R. Co.*, 43 id.,

506; *Devello* v. *The South. P. R. R. Co.*, 12 Am. Railway Cases, 180.) This case is plainly distinguishable from that class of cases in which the property of the injured person was placed in a position of danger, without fault on his part. (*Bernhardt* v. *Ren. and C. R. R.*, 23 How., 166, 169; *Dexter* v. *Starin*, 73 N. Y., 601.) Neither does it come within the principle of those cases which hold that a party who places another in peril cannot complain of his failure to exercise the best of judgment. (*Voak* v. *North Central R. R.*, 75 N. Y., 320; *Austin* v. *New Jersey Steamboat Co.*, 43d id., 75.)

*S. M. Lindsley*, for respondent. When a railroad company has its tracks in a city street, it is bound to maintain the tracks and the street, contiguous thereto, in a good and safe condition. (*Conroy* v. *The Twenty-third St. R. R. Co.*, 52 How., 49; 2 R. S. [6th ed.], 533, § 391, sub. 5; *Cott* v. *Lewiston R. R. Co.*, 36 N. Y., 214, 217; *Fletcher* v. *Auburn, etc., R. R. Co.*, 25 Wend., 464; *Worster* v. *Forty-second St. R. R. Co.*, 50 N. Y., 203.) The defendant was negligent in maintaining the rails of its road in a city street, so much above the level of the highway, that a wagon could not conveniently pass over them. (Shearman & Redfield on Neg. [3d ed.], § 446; *Oliver* v. *N. E. R. R.*, 11 Wis., 160; *Milwaukee, etc., R. R.* v. *Hunter*, id.) The jury was justified in finding the defendant guilty of negligence in running the train at an improper rate of speed. (*Massoth* v. *Del. and Hud. Canal Co.*, 64 N. Y., 524; *Correl* v. *The B. C., etc., R. R. Co.*, 38 Iowa, 120; 18 Am. R., 22.) Had the intestate been guilty of contributory negligence, the defendant, by the exercise of ordinary care, could have prevented the accident, and would still have been liable. (*Davis* v. *Man,* 10 M. & W., 546; *Kenyon* v. *N. Y. C. and H. R. R. R. Co.*, 5 Hun, 479; *Green* v. *Erie Railway Co.*, 11 id., 333; *Steele* v. *Burkhardt*, 104 Mass., 59; *Radley* v. *London and N. W. R. R. Co.*, App. Cas., 754; 18 Moak's Eng. R., 37.) The question of contributory negligence, even under

the ruling of the court, was for the jury, and they were authorized in finding the plaintiff's intestate free therefrom. (*Massoth* v. *D. and H. C. Co.*, 64 N. Y., 524; *Steele* v. *Burkhardt*, 104 Mass., 59; *Southworth* v. *Old Colony, etc., R. R. Co.*, 105 id., 342; *Jetter* v. *N. Y. C. and H. R. R. R. Co.*, 2 Keyes, 160, 161; *Correl* v. *B. C. R. and M. R. R. Co.*, 38 Iowa, 120; 18 Am. R., 22, 27; *Terry* v. *Jewett, Rec'r, etc.*, 20 Alb. L. Jour., 393; Weekly Dig., 137; *Schrinfeldt* v. *Norris*, 115 Mass., 17; *Bernhardt* v. *The Rensselaer, etc., R. R. Co.*, 23 How., 166; *Rexler* v. *Starin*, 73 N. Y., 601; *Voak* v. *Northern Central R. R. Co.*, 75 id., 320; *Mentz* v. *Second Avenue R. R. Co.*, 3 Abb. Ct. App. Dec., 274; *Macauley* v. *Mayor, etc., of N. Y.*, 67 N. Y., 602.)

EARL, J.   This is an action to recover damages for the death of the plaintiff's intestate, alleged to have been caused by the negligence of the defendant. The facts, as we must assume they were found by the jury, are these : The intestate, a man about sixty-seven years of age, was, on the day of his death, in Schuyler street, Utica, engaged in peddling kindling wood, with a horse and wagon, going northerly. The defendant's railroad track was laid through the centre of that street, upon its surface, the top of the iron rails being about four and one-half inches above such surface. There was no planking or filling between the rails to facilitate the passage of vehicles across the track. The intestate left his horse and wagon on the easterly side of the track, near the edge of the sidewalk, and stepped across the walk, about six feet from the hind end of the wagon, to solicit a person to purchase some of his wood, and while there the train came in sight from the north and frightened his horse, which turned and started across the railroad track in a south-westerly direction, and crossed over both rails to the westerly side of the track, and drew the wagon over the easterly rail and three wheels over the westerly rail, the left hind wheel sliding along the rail as the horse drew in a south-westerly direction. About the time the horse started the attention

of the intestate was called to the approaching train, which was then between two and three hundred feet distant, and he at once started to catch his horse. He ran across the track and seized hold of the horse's harness, the horse's head then being from six to eight feet from the westerly rail, and while he was there, between the westerly rail and the horse, the engine struck the sliding hind wheel and drove the fore-wheel against the intestate, and he was thrown upon the track in front of the engine and killed.

It is claimed on behalf of the defendant that the evidence failed to show any negligence on its part, and did show negligence on the part of the intestate.

As to the negligence of the defendant : The defendant was the lessee of the Utica, Chenango and Susquehanna Valley Railroad Company, which built this railroad under the general railroad act of 1850. By that act authority was given to build railroads in streets ; but the streets were to be restored to their former state, or to such state as not unnecessarily to impair their usefulness. Schuyler street was not restored to its former state, and it was at least a question of fact for the jury whether its usefulness was not unnecessarily impaired. It is very probable that this accident would not have occurred if there had been some filling on the side of the rails, so that the wheels of the wagon could readily have passed over them. The defendant cannot escape liability for this condition of the railroad, because it was simply the lessee of the road. It had the possession, the use and the control of the road, and could not keep and maintain the rails in such way in the street as to be dangerous to travelers thereon, and yet escape responsibility. He who knowingly maintains a nuisance is just as responsible as he who created it : (*Moshier* v. *The Utica and Schenectady R. R. Co.*, 8 Barb., 427; *Brown* v. *The Cayuga and Susquehanna R. R. Co.*, 12 N. Y., 486.) Besides it appears that the rails in use at the time of this accident were such as were placed there by the defendant. Thus there is one ground of negligence. There is another. There was a city ordinance which allowed

the defendant to run its trains within the city of Utica, not to exceed eight miles an hour, and there was evidence that the train on this occasion was running at the rate of twelve miles per hour ; and this evidence was competent as bearing upon the question of defendant's negligence : (*Massoth* v. *Del. and Hud. Canal Co.*, 64 N. Y., 524.)

As to the negligence of the intestate : He was lawfully in the street, engaged in a lawful business. There is no absolute rule of law that requires one who has a horse in a street to tie him, or to hold him by the reins. It would doubtless be careless to leave a horse in a street wholly unattended without tying him to something. But it is common for persons doing business in streets with horses, to leave them standing in their immediate presence while they attend to the business, and it is not unlawful for them to do so. It is commonly safe so to do, and accidents are rarely occasioned thereby. There was no proof that this horse was vicious, unsafe or unmanageable. He was left about twelve feet from the easterly rail of the railroad track. It was not shown that the intestate knew that a train was at that time to be expected. He was near his horse, and might expect, in an emergency, to control him by his voice, or to reach him before he could escape. Whether he acted prudently under such circumstances, in leaving his horse there, was a matter to be determined by the jury upon the evidence : (*Southworth* v. *Old Colony and Newport Railway Co.*, 105 Mass., 342.) It cannot be said, as matter of law, that he violated the city ordinance, which forbade any person leaving a horse in any street unless securely tied. The jury could have found, and we may assume that they did find that this horse was not left in the street, within the meaning of this ordinance, while he was in the immediate presence of his owner. It cannot be supposed that it was intended by this ordinance to require all vendors or peddlers of commodities in the streets of the city to tie their horses, or have some one hold them, while they are momentarily engaged in delivering their commodities to persons in the streets or at doors of the

houses along the streets; nor can it be supposed that it was intended to inflict a penalty upon every person who should fail to tie or hold his horses in the street while standing near them.   The ordinance was manifestly intended to reach the cases of persons who might leave their horses in the streets not tied, and go away from them out of sight, or to such a distance as to lose that control which persons may usually exercise over horses when near them.   It only remains, then, to be considered whether the intestate was in fault for trying to catch his horse.   The horse and wagon had some value, and we may assume, from the humble occupation in which the intestate was engaged, that they were of great value to him.   He had the right, and was under some sort of duty to rescue them from danger if he could.   He, therefore, had business in the place where he was when he was killed.   It cannot be said that he went there for no purpose, and that he unnecessarily placed himself in danger.   The whole transaction took but a moment.   He saw the train coming.   The impulse to save his property was a natural one.   He had no time for reflection.   He saw how distant the train was, and supposing that he could rescue his horse, started.   He got across the track, and would have been safe, but for the sliding of the wagon wheel in consequence of the elevated rail.   It is easy enough now to see that his effort was a hazardous and unsafe one.   But can we say, as matter of law, that he, situated just as he was, with no time for cool reflection, failed in that care which men of ordinary prudence would exercise under the same circumstances?   We think not.

But even if the intestate were chargeable with carelessness in leaving his horse in the street, so that he could not have recovered for the loss of his horse if he had been killed, and so that he would have been liable for any damage done by his horse, yet the case would not have been different.   Such carelessness would not have been, in any proper sense, the immediate or proximate cause of the accident.   He would not, therefore, have forfeited his horse, or have been absolved from the moral duty to secure him from danger.   The ques-

tion would then have been as it is now, whether, under all the circumstances, he exercised ordinary prudence in his efforts to catch his horse.

The case of *Gray* v. *The Second Avenue R. R. Co.* (65 N. Y., 561) — much relied on by the learned counsel for the defendant — is not in conflict with any of the views above expressed. It is clearly distinguishable from this case, as can be seen by an examination of the opinion at large, on file with the clerk of this court.

This case was, therefore, a proper one for the jury; and their determination, under a charge not complained of, concludes us.

The judgment should be affirmed, with costs.

All concur, except RAPALLO, J., not voting.

Judgment affirmed.