JENNIE C. BELL, AS ADMINISTRATRIX, ETC., OF CHARLES BELL, DECEASED, APPELLANT, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, RESPONDENT.

*Street — duty of a railroad company not unnecessarily to impair its usefulness — 1850, chap. 140, sec. 28 — when questions of negligence should be left to the jury.*

The defendant laid its tracks and operated its road through Washington street, between Market and Mulberry streets, in the city of Syracuse. The rails projected about four and a-half inches above the paved surface of the street, and the spaces between them were not planked or filled in except at the places where Washington street was crossed by the other streets. The north rail was about ten feet from the north curb of Washington street. The plaintiff's intestate turned into Washington street from Market street, driving eastwardly towards Mulberry street, to deliver ice at a hotel in the middle of the block. Both sides of the street were filled with buildings used for business purposes. While delivering the ice a train came from the east. When the engine came near to the horses they became frightened and the wagon was backed against the train whereby the deceased was killed.

In this action brought to recover damages for his death the plaintiff was nonsuited.

*Held,* error.

That the defendant having failed to restore the street to such a state as not unnecessarily to impair its usefulness, as required by the statutes authorizing it to use the street, it was for the jury to say whether or not its failure so to do did not occasion the accident.

That the failure of the defendant to comply with the terms of a city ordinance,
prohibiting railroad companies from blowing off steam from their locomotives
so as to annoy teams or foot passengers, should also have been submitted to
the jury as tending to establish negligence.

That the question as to whether or not the plaintiff was guilty of contributory
negligence in failing to jump from the wagon upon the approach of the train,
should, under the circumstances of the case, have also been submitted to the
jury.

APPEAL from a judgment in favor of the defendant, entered upon
a nonsuit directed at the circuit, and from an order made at a Special
Term denying a motion for a new trial.

*E. D. Crosley,* for the appellant.

*Brown & Garfield,* for the respondent.

BARKER, J.:

Charles Bell, the plaintiff's husband, was killed in the city of
Syracuse in May, 1881, in consequence of a collision with a train
of the defendant's cars while the same was moving through Wash-
ington street.

This action is brought under the statute, the plaintiff claiming
that the accident was caused by reason of the negligence of the
defendant's engineer in charge of the engine.

The facts and circumstances upon which the question of the
defendant's negligence is to be determined are in no real dispute,
and are substantially as follows: Washington street, at the place
where the collision occurred, is in a busy part of the city and is
sixty-six feet wide between the face of the buildings located thereon
and is devoted to trade and traffic. The defendant maintains two
tracks along this street for the distance of more than a mile, and
the north rail of the north track is ten feet from the curb-stone,
and the sidewalk on this side of the street is six feet in width.

Market street and Mulberry street cross Washington street at
right angles and are 340 feet apart. At these crossings the tracks
and the space between the tracks are planked over so as to make a
safe and easy crossing. The portion of the tracks between these
two streets is not planked, and the rails are four and one-half inches
above the common surface of the street. The space between the
north rail and the curb-stone on the north side of Washington street,

and between Market and Mulberry, is paved so as to make a smooth and even surface for wagons and carriages. The entire block on the north side of Washington street, between Market and Mulberry, is composed of business places, Miers' hotel being near the center.

The deceased was engaged by one Rouse as the driver of a team attached to an ice wagon, and he a few minutes before the accident came into Washington street from Market and drove up in front of Miers' hotel close by the curb-stone in view of delivering ice at that hotel. While he was there in his seat in charge of the team and another person engaged in delivering ice the train came along from the east, and when the engine came near to the horses they became frightened and unmanageable and the wagon was backed against the train, and the deceased receiving injuries from which he immediately died.

It was lawful for the defendant to lay down and maintain its tracks in Washington street and move its trains thereon. This privilege was conferred by statute. But the same statute imposed upon it the obligation of restoring the street to its former state, or to such condition of repair as not unnecessarily to impair its usefulness. Upon the facts there is reason for saying that this section of the street was out of repair, and that the defendant was guilty of negligence and the deceased came to his death in consequence of the condition of the street at the time and place of the accident.

The provisions of the general railroad act of 1850 are as follows: That every corporation formed under the same shall have power to construct its road across, along or upon any street, highway, plank-road or turnpike within this State which the route of the road shall intersect or touch. But the company shall restore the street or highway thus intersected to its former state, or to such state as not unnecessarily to have impaired its usefulness. (The Railroad Act, 1850, chap. 140, § 28.)

This statutory obligation is imperative and absolute, and until this requirement of the law is complied with the railroad company is guilty of a breach of duty which it owes to the public, and is liable to injured persons for all damages resulting from its negligence in this respect.

The nature and extent of the privilege conferred by this statute, and the duty of the railroad company to repair and restore the road,

have been the subject of frequent adjudication, and its obligations thereunder are no longer a question of much doubt or uncertainty.

The Auburn and Syracuse Railroad Company was constructed under an act of the legislature which gave it the power to cross and run along streets and highways, but imposed the duty upon the company to restore the same to its former state, or in a sufficient manner not to impair its usefulness. *Fletcher* v. *The Auburn and Syracuse Railroad* (25 Wend., 462) was based upon the provisions of this act, and the court decided that it was the duty of the defendants to restore the road so as not to impair its usefulness, and that it was made one of the conditions of the enjoyment to make such restoration, and if it omitted to do so the company was liable for all damages which might accrue to the public.

As to the duty of a railroad company to restore the road as required by statute, and that it is negligence on the part of the defendant to omit this obligation, *Wasmer* v. *Delaware, Lackawanna and Western Railroad Company* (80 N. Y., 212) is a direct and controlling authority.

In that case the defendant's railroad track was laid through the center of a street in the city of Utica, the top of the rails being about four and one-half inches above the surface of the street. There was no planking or filling between the rails to facilitate the passage of vehicles across the track. The person injured was traveling upon that street and left his horse unfastened by the side of the tracks, he being engaged in peddling kindling wood in the neighborhood, and while a few steps away from his wagon a train came in sight and frightened his horse and it turned and started across the tracks and drew the wagon in part upon the rails. While the horse was upon the tracks the owner ran to the horse and seized some part of the harness, and while engaged in attempting to manage his horse and lead him off the tracks, he was struck by the engine and killed. It was held that the fact the rails were left so much above the common surface of the street that the company was guilty of a breach of duty which it owed to the public, and in commenting upon the statute EARL, J., remarked: that by the terms of the general railroad act " authority was given to build railroads in streets, but the streets were to be restored to their former state, or to such state as not unnecessarily to impair their usefulness. Schuyler street

was not restored to its former state, and it was at least a question of fact for the jury whether its usefulness was not unnecessarily impaired. It is very probable that this accident would not have occurred if there had been some filling inside of the rails so that the wheels of the wagon could readily have passed over them."

The case of *The People ex rel. Green* v. *The Dutchess and Columbia Railroad Company* (58 N. Y., 153) related to the duty and obligation of railroad companies to restore highways intersected by them to their former usefulness. It was a proceeding by *mandamus* to compel the defendant, a railroad company, to restore the highway to its former condition of usefulness which it was alleged by the relator it had omitted to do.

It was held that this obligation on the part of the company interested the public, and it could be compelled by the courts to perform its duty in that respect and a peremptory writ of *mandamus* would be ordered for that purpose. That while a discretion was given to the railroad company to determine the mode and manner of restoration, yet there must be in some form a restoration in fact so as not unnecessarily to impair the usefulness of the highway, and that the court will interfere and exact a full performance in this respect.

In *Worster* v. *The Forty-second Street Railroad Company* (50 N. Y., 203), which was an action for damages for injuries to a horse, received while crossing the defendant's tracks, which the owner of the horse alleged to be out of repair; the court held that while the defendant had a lawful right to lay their tracks in the street where the injury occurred, that this right carried with it the obligation to lay the tracks in a proper manner and keep them in repair, and that if any injury occurred by reason of neglect in these respects the defendant was liable in damages. (See, also, *Fash* v. *Third Ave. R. R. Co.*, 1 Daly, 148; *Conroy* v. *Twenty-third Street R. R. Co.*, 52 How., 49; *Gillett* v. *The Western R. R. Corporation*, 8 Allen, 560.)

Streets and highways are opened and maintained at the cost of and for the convenience of the public to favor and facilitate travel and traffic. The law is vigilant to protect all persons lawfully in the highway against the obstructions and hindrances of others.

It is a maxim of the law whenever a private injury has been sustained from an unauthorized obstruction in the public thorough

fare that the injured party is entitled to compensation in damages from the wrong-doer.   (1 Addison on Torts, 207.)

The omission of the defendant to plank over and fill in between the rails and tracks is one circumstance which may be pointed to, as causing the death of the deceased.   The act of the defendant prevented his turning the team into the street and driving to a place of safety while the train was passing.

On the approach of the train there was but one way for him to escape with the team from the predicament in which he found himself, and that was to drive forward and towards the approaching train with a view of turning into Mulberry street and leaving Washington.   These facts and circumstances fairly tended to prove the defendant's negligence.

At the time of this occurrence there was an ordinance in force in the city of Syracuse prohibiting railroad companies occupying the public streets from blowing off steam from locomotives to the annoyance of teams or foot passengers, and imposing a penalty for a violation of the same.   The evidence, in our opinion, tended to prove that this ordinance was violated by the defendant on this occasion, and the escape of steam from the locomotive attached to the train had the effect to frighten the team and for that reason it became unmanageable.   This ordinance did not aim to prevent the escape of steam from a locomotive engine while passing through the streets, for such a provision would be altogether unreasonable.

The purpose of the by-law was to require the engineer in charge of the engine when passing within the limits of the city to be upon the look out and not to suffer the steam to escape in such quantities and in an irregular manner which, if permitted, would have the effect to frighten horses and to alarm persons upon the street.

In operating its road and running its trains through the thickly settled and business parts of the city a railroad company is required to exercise great care and caution   It must so run its trains and use and occupy its railroad in the enjoyment of the right of way which it has in common with the ordinary traveler as not to injure others in the exercise of their right of way, provided the latter are guilty of no want of care on their part.   ( *Webber* v. *N. Y. C. and H. R. R. R. Co.*, 58 N. Y., 459; *Smedis* v. *Brooklyn and Rockaway Beach R. R. Co.*, 88 id., 20.)

A fair question was presented for the consideration of the jury, whether the discharge of steam under the circumstances was unnecessary and in violation of the ordinance; and if they should be of that opinion, then the act was one of negligence on the part of the defendant.

On the question of the negligence of the deceased we are of the opinion that it should have been submitted to the jury. If his negligence was made to depend solely on the question whether he saw the train or not in time to leap from his seat and save his life there would be but little difficulty, if any, in holding that his own carelessness contributed to his injuries and death.

As bearing on this issue, however, there are many other facts and circumstances which should be taken into consideration. He had a right to rely on an observance of the ordinance by the engineer; and also that the team were more or less accustomed to the noise and appearance of moving trains, and that they did not become altogether unmanageable on such occasions. He owed a duty to his employer to make every reasonable effort to protect the property in his care without needlessly exposing himself to danger.

It cannot be said as a matter of law that the deceased failed to exercise ordinary care and prudence, and his action was not such as a cautious and prudent person would have adopted on a like occasion. When the circumstances under which the party acts are complicated, and the general knowledge and experience of men do not at once condemn his conduct as careless, it is plainly to be submitted to the jury. What is ordinary care in such cases, even though the facts are undisputed, is peculiarly a question of fact to be determined by the jury under proper instructions. It is the judgment and experience of the jury and not of the judge which is to be appealed to.

The judgment and order appealed from are reversed and a new trial granted, with costs to abide the event.

Present — SMITH, P. J., HARDIN and BARKER, JJ.

Judgment and order reversed and new trial ordered, costs to abide event.