SARAH ANN WILLIAMS, AS ADMINISTRATRIX, ETC., OF GIDEON D. WILLIAMS, DECEASED, APPELLANT, *v.* THE SYRACUSE IRON WORKS, RESPONDENT.

*Contributory negligence — when a question for a jury — violation by an employe of a rule of his employer — when it is not contributory negligence as a matter of law.*

The plaintiff's intestate, who was employed as an engineer in the defendant's rolling mill, while sitting, smoking in a door-way fronting upon the canal, was struck and killed by the door falling upon him from above by reason of the breaking of the ropes which sustained it. The plaintiff sought to recover the damages she had sustained by his death upon the ground that the defendant negligently sustained the door, by imperfect ropes, in an improper manner. There was evidence tending to show that the deceased left the engine, of which he was in charge and went some eighty feet to the door-way for the purpose of obtaining fresh air, although he could have obtained open, cool air at points nearer to his engine. It appeared that the rules of the defendant declared that " no smoking during working hours " would be allowed, and that the deceased had been instructed " not to leave his engine during working hours." The evidence as to whether or not a whistle, which was the signal for the deceased to take charge of the engine, had been blown before or after he went to the door-way, and as to the defendant's knowledge of and acquiescence in a custom of its engineers to leave their engines during working hours to seek cool and fresh air, was conflicting:

*Held,* that the question, as to whether or not the deceased had violated the rule

against leaving his engine during working hours by going to the door-way, should have been submitted to the jury.

That the fact that he was smoking at the time of the fall of the door did not prevent a recovery, because it was a question of fact whether or not he knew of the rule, forbidding him so to do, and whether or not the smoking occurred before or after the whistle sounded, and because in any event it was not the immediate or proximate cause of the accident, and the court could not under the circumstance of the case declare it as a matter of law to be contributory negligence.

APPEAL from a judgment in Onondaga county, entered upon a nonsuit granted at the Onondaga Circuit, and also an appeal from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

*William Nottingham,* for the appellant.

*William G. Tracy,* for the respondent.

HARDIN, J.:

June 22, 1882, the intestate was in the employ of defendant, as engineer in a rolling mill, and between the hours of six P. M. and 7 P. M., sustained injuries from which he died.

Plaintiff, as his representative, brings this action to recover for the alleged negligence of the defendant, in having improperly left a door of some 350 pounds weight insecurely sustained by imperfect ropes passing over pulleys, which broke and allowed the door to fall upon the body of the deceased and inflicted injuries from which he died. Whether then defendant was guilty of negligence need not be discussed, as there was evidence upon that branch of the case which the learned trial judge held, as we think properly, presented questions for the jury. Plaintiff's counsel asked to go to the jury upon the question as to whether the plaintiff's intestate was guilty of contributory negligence, and upon other questions which may be referred to hereafter. Of course it was a part of the plaintiff's case to be shown that the intestate was free from contributory negligence, and it was her privilege to show that by direct and positive evidence, or by facts and circumstances which would warrant a jury in finding that the intestate was free from contributory negligence. (*Reynolds* v. *N. Y. C. R. R.,* 58 N. Y., 248; *Hart* v. *Hudson River Bridge Co.,* 84 id., 56; *Beisegel*

v. *N. Y. C. R. R. Co.*, 14 Abb. [N. S.], 29 ; *Tolman* v. *Syracuse and B. R. R. Co.*, MS. opinion of this Term.) *

Respondent's counsel correctly insists, that where the facts constituting contributory negligence are undisputed, the question should be decided by the court as a matter of law and not left to the jury as a question of fact. (*Cordell* v. *Railroad Co.*, 75 N. Y., 330.) So, too, any degree of contributory negligence which "immediately conduced to the injury is a complete defense." (*Bunn* v. *Delaware, L. and W.*, 6 Hun., 303 ; *Gray* v. *Second Ave. R. R. Co.*, 65 N. Y., 561 ; *Keese* v. *New York and H. R. R. Co.*, 67 Barb., 205.)

Respondent gave evidence that one of the written rules of the company, posted upon the premises to govern the workmen, declared that "no smoking during working hours" will be allowed in the premises. It also gave evidence by Barker, an assistant and superintendent, that he had given verbal instructions to the deceased "not to leave his engine during working hours." It also appeared from the evidence that deceased's trick began at six P. M., and that about that hour he entered the premises in pursuance of his employment as a servant of defendant, and that it was his duty to take charge of his engine, and to keep in charge of it until six or seven in the morning. It also appeared that there was some evidence tending to show that there was a custom to blow a water whistle, as a signal for night hands to begin work and for each engine to start up. The witness James Sneck, says the whistle had blown for his engine to start up, and he adds, that he would not swear positively whether it had blown for deceased's engine, and then he follows that testimony by saying that he heard the whistle of deceased's engine "blow to start up just before he started, and found him under the door," and that was the first time he had noticed the whistle blown to start up that night, and that the witness went right off after the whistle blew, "may be five or six minutes, may be ten, and found him lying under this door." With this evidence in the case we are inclined to the opinion that it was a question of fact for the jury to determine, whether the deceased had commenced to operate his engine, in the sense referred to in the instructions about leaving his engine.

---

* Reported, *post* p. 397.

If he was warranted, by the custom to sound a whistle as a signal to start his engine, to wait for the whistle, and if the engine had not been started and his duty to be at the engine had not begun, then the case stands free of the questions made in respect to the supposed violation of duty, or disregard of the instructions. In that aspect of the case there was other evidence tending to show that the engine had been started and that the deceased left it to visit the door where he received the injuries after his engine had been started and after he had begun the active charge of the engine. However, the evidence would have warranted the court in leaving it to the jury to say upon the conflicting evidence what was the fact.

(1.) If the engine had not been started then the rule or instructions relied upon would not apply and the deceased would not be liable to the imputation of a disregard of the instructions. (2.) But suppose the jury had been allowed to find, and had found, that the engine had been started, then another and we think pertinent question for the jury would have been whether by being at the door fronting the canal where fresh air could be obtained, a distance of some eighty feet from the engine, the deceased could be said to have " left his engine during working hours."

Upon that question, and upon the construction to be given to the instructions, the custom of the engineers to seek cool and fresh air with the knowledge and apparent acquiescence of their superiors " during working hours," was cogent evidence for the consideration of the jury. We do not overlook the evidence tending to show that engineers sometimes did and could have obtained open, cool air at points nearer to the engine than the place where the deceased was sitting when he received his injuries.

However, we are of the opinion that all those considerations should have been weighed by the jury in determining whether or not the deceased, at the time he received the injuries which resulted in his death, was in violation of the instructions he had received; or whether the instructions (by custom known to the superintendent and his assistants), had been so far modified as to allow of reasonable efforts to obtain open and fresh air, and whether or not the conduct of the deceased was in disregard of positive and absolute instructions forbidding him from visiting the door which fell upon him.

Practices of the employes under the instructions as to remaining

near or in close proximity to the engine during working hours, with the knowledge of the defendant, were entitled to much consideration in giving construction to the rule invoked by the defendant as evidence of deceased's contributory negligence. It cannot be said as a matter of law that the deceased had so violated his duty in the premises, and by the act of sitting in the open door so contributed to the negligent act of the defendant which caused the injury, as to bar a recovery. (*Wasmer* v. *D., L. and W. R. R. Co.*, 80 N. Y., 217.)

Therefore, we say, that the question made at the trial, as to "whether or not the order which was given was violated with reference to leaving the engine during working hours," ought, as requested, to have been submitted as a question of fact to the jury. And the exception taken to the refusal to submit that branch of the case to the jury presents an error requiring us to grant a new trial. (*Sprong* v. *The Boston and A. R. R.*, 58 N. Y., 60, 61.) The fact that the deceased had been smoking prior to the fall, or even that he was smoking at the time of the fall of the door, did not authorize the court to say as a matter of law that he was guilty of contributory negligence.

(1.) It was a question of fact whether or not he knew of the rule disallowing employes the privilege of smoking on the premises "during working hours." (2.) Whether or not the smoking occurred after the water whistle sounded for the deceased to begin his working hours. (3.) Smoking was not the immediate or proximate cause of the accident, and under the circumstances disclosed by the evidence, the court was not at liberty to say, as a matter of law, that it was contributory negligence producing or inducing in whole or in part the fall of the door which caused the injury.

The penalty prescribed by the regulations posted for disobedience of the same "was prompt discharge from the employ of the company." To add to that penalty a forfeiture of all right to recover for defendant's negligence, in leaving dangerous and unsafe places upon the premises, would be visiting a greater hardship than was contemplated by the author of the regulations, or than the smoker might reasonably be required to submit to, in addition to the prescribed punishment. (*Platz* v. *The City of Cohoes*, 89 N. Y., 222.) In that case DANFORTH, J., says: "It may indeed be

said that if the plaintiff had obeyed the law, remained at home and not traveled, the accident would not have happened. That is not enough. * * * It must appear that the disobedience *contributed* to the accident * * *."

It may be entirely reasonable to prohibit smoking in such establishments as the defendants, during working hours, and to follow the disobedience of the regulations to that effect with a "prompt discharge," but to hold, as a matter of law, that smoking under the circumstances disclosed, forfeited the right of the intestate, or of his representative to recover, would be unreasonable and a greater penalty that the most ardent opponent of smoking could reasonably maintain. It is said smoking brings its own punishments; they may be numerous, but a forfeiture of a right of action under the circumstances of this case, is not one of them. (*Carroll* v. *Staten Island R. R. Co.*, 58 N. Y., 126; *Ford* v. *Fitchburg R. R. Co.*, 110 Mass., 240; *Baker* v. *City of Portland*, 58 Maine, 199.) Our views thus expressed lead us to reverse.

Judgment and order reversed, and a new trial ordered, with costs to abide the event.

SMITH, P. J., and BARKER, J., concurred.

Judgment and order reversed, and new trial ordered, with costs to abide the event.