KATE E. SHERRY, as Adminstratrix, etc., Appellant, *v.* THE
NEW YORK CENTRAL AND HUDSON RIVER RAILROAD
COMPANY, Respondent.

*Court of Appeals, January* 18, 1887.

Reversing same case, 40 Hun, 634, Mem.

1. *Negligence. Contributory.*—Though the bell is not rung or the whistle
sounded, it is still the duty of a traveler on the street crossed by
the railroad to exercise due care and diligence to discover whether
a train is about to pass, and if he fails to do so, or if, seeing the
approaching train, he nevertheless undertakes to cross, he is
guilty of negligence, and, in either case, if injured, so contributes
to the accident that he can have no just cause of action.   To
determine whether a complaining party is within this rule of ex-
clusion, or whether his conduct in a given case is consistent with
reasonable and ordinary care, is in view of all the circumstances
surrounding the transaction, usually a question for the jury; and
only in exceptional cases, when no facts are in dispute, nor any
weighing of testimony necessary, can the court answer it.
2. *Same. Nonsuit.*—Where it cannot be said, as matter of law, what a
prudent and reasonable person would have done in circumstances
similar to those in which the intestate was placed, a jury alone
can determine what was his duty, and how far it was performed,
and the court would err in granting a nonsuit.

Action to recover damages for alleged negligence, causing
the death of plaintiff's intestate, who was killed while cross-
ing the tracks of defendant's road.   Plaintiff was nonsuited

on the trial on the ground of contributory negligence on the part of the deceased.

Appeal from a judgment of the general term of the supreme court, affirming a judgment of the circuit granting a nonsuit.

*Crumby & Jones,* for appellant.

*C. D. Prescott,* for respondent.

DANFORTH, J.—The learned counsel for the respondent, at the opening of this argument, conceded that he was bound to assume, for all the purposes of the case, that upon the occasion in question the defendant omitted to give the statutory signal of its approach. It was therefore in fact and in law guilty of negligence. But although the bell was not rung or the whistle sounded, it was still the duty of one traveling on the street crossed by the railroad to exercise due care and diligence to discover whether a train was about to pass, and if she failed to do so, or if, seeing the approaching train, she nevertheless undertook to cross, she was guilty of negligence, and, in either case, if injured, so contributed to the accident that she can have no just cause of action. To determine, however, whether a complaining party is within this rule of exclusion, or whether her conduct in a given case was consistent with reasonable and ordinary care, all the circumstances surrounding the transaction are to be examined. Usually, therefore, the question is for the jury, and only in exceptional cases can the court answer it. The court may dispose of the case ; and it is its duty to do so when no facts are in dispute, or any weighing of testimony necessary.

The case before us was disposed of by the trial judge as one of that character, and the appeal questions the correctness of his decision. The appellant here was plaintiff in the action. Her intestate, Charlotte Briggs, was struck and killed by the defendant's locomotive engine at the railroad crossing

of Fifth street, in the village of Little Falls, between 2 and 3 o'clock in the afternoon of October 4, 1883.   The railroad of six tracks crosses the street upon a curve, but nearly at right angles.   It afforded protection by neither flagman nor gate, and, upon the occasion in question, its· train came from the west upon the crossing, out of time, at the speed of 30 miles an hour, sounding neither bell nor whistle, and, so far as appears without other warning of its approach. Between Fifth street and the west were various obstructions to the view, a ledge of rocks separating two of the tracks from the other four, and the fences of a cattle-yard extend-ing up to the west line of Fifth street.   On this occasion there were also box cars of the defendant upon a side track, just west of the crossing, and which cut off the view until the wayfarer had actually reached the main track.   The curve was of such a radius that although, when on the tracks, a person could, according to her position, see an approaching train at a distance of from 580 to 645 feet, she could, under the most favorable circumstances, identify the track over which it moved at but from 400 to 440 feet.   There was much wind at the time, and south of the railroad, and in its vicinity, were mills and factories, whose machinery created considerable noise.

The woman came along Fifth street to the crossing, passed over two tracks and through the intervening space by the box cars to the most northerly, or fourth, of the four tracks, and, passing on, had reached No. 1, or the most southerly, when she was struck and killed.   In deciding the motion for a nonsuit the court held that, under the circumstances in evidence, it would be a question for the jury whether " she may not have exercised her hearing—may not have listened,—and still not have heard the train ; that whether she could have seen the train from the open space, or from the most northerly of the four tracks, was also for the jury saying " upon the evidence here, the jury would have a right to find that there were box cars there, and that her view

was impeded somewhat by those, so they might find she could not see upon the track until she passed to the southerly edge of that siding, or stepped over the rail." Nor did the learned judge think that it could be said as matter of law that she did not look while on the railroad after passing the point up to which she could not see. From that point where the view was unobstructed by the box cars across the road to the rail of track No. 1,—where she was killed,—was thirty-two feet and two inches. It was covered by the defendant's tracks. She was upon them, and the argument is that, if she looked, she must have seen the approaching train, and during that time had the ability to save herself by keeping off the track No. 1. "I am hardly willing," says the learned judge, "to say that, whether she looked or not, might not be a question to the jury. What I do think is that she had no right to pass over that thirty-two feet and two inches, and go upon that track, with the train in full view coming towards her; and when she did it, she did it either from a thought that she could get over in safety before the train struck her, or made a miscalculation; and, if she did, that is negligence, because, when she saw the train coming, her duty was not to attempt to get past before the train came, but to wait;—and, if she took the chances, she took the chance of her death, without holding the defendant liable."

Upon this ground the nonsuit was granted, and upon this ground the learned counsel for the respondent contends that it should be sustained. Certainly, upon the evidence there is no other. In approaching the railroad, and entering upon its group of tracks, the jury might well find that the traveler exercised as much diligence as a prudent person would exercise under the circumstances, having regard for her own safety and fairly endeavoring to perform her duty. This, under the rulings of the trial judge, was the law of the case. She undoubtedly came into a place of danger the instant her foot touched the road-bed of the defendant; but the omis-

sion of the defendant to obey the law, and give notice of the
running train, was an assurance of safety, and that no loco-
motive engine was within 80 rods of the place where she
then lawfully was. That omission was not only negligence
and a violation of a statutory duty on the part of the defend-
ant, but it also bears upon the conduct of the plaintiff, and
must effect any estimate of the amount of care she should
have observed. Nor did the court hold that she did not look
or observe after reaching the tracks. She is charged with
having seen the train before she reached the track where
she was killed. The evidence permits the inference that,
before reaching the middle of the four tracks, the train
could not be seen, and might not be heard, and, when first
in view, that it would be difficult to determine on which of
the four tracks it was moving. One L., passed over the
same crossing just a little ahead of Mrs. Briggs. He first
saw her as he was going upon the track from the north,
she then being 20 feet behind him. He passed completely
over the railroad, and reached the south side of all the
tracks, when he first heard the train approaching. He heard
the noise, but could not see the train. " After hearing the
train, and while standing within four feet of the first track,"
he says, " I saw the old lady between tracks two and three."
C., being south of the crossing, saw her coming from the
north towards and upon the four tracks. " Before going on
she raised her head up." He says: " As the train rounded
the curve the old lady was somewhere between tracks two
and three, coming south, facing me," and adds: " From
the point where the old lady was when the train rounded
the curve, the track upon which a train approaching from
the west is coming cannot be determined without you are
familiar with the tracks. The track the train is approach-
ing on cannot be seen. I next," he says, " saw the old
lady between tracks one and two. I then saw her throw
up her head and quicken her pace. She was coming to the
south. My attention was called to the train as it came

down between Fifth and Sixth streets. It was blowing off steam. I noticed the smoke. It was a cold, windy afternoon. The wind was blowing from the west. From where I stood I could see the steam and smoke. The wind blew it to the ground facing the engine. It blew it down in front of the engine. The old lady at that time was between tracks one and two." At that time, also, a train was coming from the east; and, on the crossing just south of the railroad, the witness L., was preventing, with some difficulty, another woman, drawing a little wagon, from entering upon the railroad.

There is other evidence bearing upon these circumstances and, in reviewing the propriety of a nonsuit, the appellant is entitled to have all of it construed in a manner most favorable to her contention. Harris *v.* Perry, 89 N. Y., 308. We think it cannot properly be said, as matter of law, that the intestate was in fault. By the sudden appearance of the locomotive she was called upon to determine whether she should stand still or go north or south,—north to retreat, or south to get over the tracks. If, as is assumed, she saw the locomotive, it may also be inferred that she was ignorant as to which track it was upon. The configuration of the tracks, the wind driving before the locomotive its steam and smoke, might well tend to disturb her judgment. The noise of the mills; the fracas with the woman whose course was interrupted; the train coming from the east; even the very number of the tracks,—might add to her confusion. Determine she must, and that instantly, between these hazards. It cannot be said, as matter of law, what a prudent and reasonable person would have done in circumstances similar to those in which the intestate was placed. For aught she could see there was possible danger in each direction, and her present position one of jeopardy. A jury alone can determine what was her duty, and how far it was performed. These things were to be ascertained as facts, and the principle embodied in the maxim, "*ad questiones*

*facti non respondent judices,*" has full application.  Wasmer *v.* Delaware, etc., R. Co., 80 N. Y., 218; Beisiegel *v.* Same, 34 N. Y. 622; Greany *v.* Long Island, R. Co., 101 N. Y. 419.

We think the court erred in taking the case from the jury.  The judgment should therefore be reversed, and a new trial granted, costs to abide the event.

(All concur, except EARL, J., taking no part.)