66 561
s67 255

IRVING D. BELLES, PLAINTIFF AND DEFENDANT IN ERROR, v. WILLIAM H. KELLNER ET AL., DEFENDANTS AND PLAINTIFFS IN ERROR.

Argued June 6, 1900—Re-argued February 7, 1901—
Decided April 16, 1901.

1. It is not, *per se*, negligence to leave a horse untied upon a public street while the driver is on the sidewalk loading or unloading his wagon.

2. A refusal to charge a request, in such a case, that "it is not negligence for the driver of a quiet, gentle horse to leave him untied, and otherwise unattended, on the side of a public highway, while the driver is upon the sidewalk loading goods in the wagon," is error.

3. One of the essential grounds of defence, which a defendant has the right to have stated to the jury, is that the horse was, and was known to be, a kind and gentle one.

4. Where the proof is undisputed that the horse was a kind and gentle one, and no reference is made to that fact in the charge of the court, notwithstanding a request to that effect, it is error which will lead to a reversal.

---

In tort.   On error to the Circuit Court of the county of Essex.

Before DEPUE, CHIEF JUSTICE, and Justices GUMMERE, LUDLOW and FORT.

For the plaintiffs in error, *Lindabury, Depue & Faulks.*

For the defendant in error, *Burton L. Hare* and *Samuel Kalisch.*

The opinion of the court was delivered by

FORT, J.   This was an action for damages tried at the Essex Circuit, brought by the plaintiff to recover for an injury alleged to have been occasioned by a horse of the defendants left standing in the public streets of the city of Newark, without being in charge of any person and without being tied or otherwise secured.

The plaintiff was a letter carrier, and was in the habit of passing upon his wheel, three or four times daily, the place where the accident happened.   The defendants are retail merchants in the city of Newark, and their delivery wagons are accustomed to be backed to the curb line adjoining their property on Halsey street; the wagons are cut-under wagons, and the horses are turned so as to stand parallel with the sidewalk, and left untied while the wagons are being loaded.   With these facts the plaintiff was perfectly familiar.

It is claimed by the plaintiff that, upon the day of his injury, three of these delivery wagons were thus standing, with the horses hitched thereto, facing to the north, parallel with the east side of Halsey street.   The plaintiff states that he was riding at a speed of about six miles an hour; that he had passed two of the wagons of the defendants and was about to

pass the third when the horse attached to it, to quote his language, "suddenly, without any warning at all, swerved around, knocking me on the right side, and lifted me from my wheel, and threw me so I landed on the asphalt pavement on my left shoulder and head, with my heels in the air."

The testimony of the plaintiff is corroborated in part by the witness William Jacobus, who says that one of the horses attached to defendants' wagon, just as plaintiff got there, turned and hit him. This witness also says that the plaintiff was right alongside of the wagon and the horse turned out and hit him, just as he was in front of the wagon, and he also says that he was about two feet to the left of the plaintiff and about three or four feet behind him, and that, after the plaintiff was thrown, he went a little way and jumped off; that they were riding at an ordinary gait, not slow nor fast.

William Elston, another witness, states that the horse stepped out and his head and shoulders struck the plaintiff and threw him, but that he is not aware that the wagon moved, and that the horse stepped back again in his place after hitting the plaintiff. This witness states that a crowd of people were going both ways on wheels and in carriages at the time of the accident.

Another witness says that the horse's head was nearest the plaintiff, and must have been what struck him, as when he came out his head was the only part that was near the plaintiff.

There was proof from all these witnesses, or at least from some of them, that the horse was not tied, but was standing, as has been described, while the wagon was being loaded, with his driver and possibly another person on the sidewalk or between the sidewalk and the building.

The defendants' witnesses denied that the horse moved until he was struck by the plaintiff with his wheel, and assert the theory that plaintiff had fallen from his wheel and frightened the horse, which moved from the fright and was stopped immediately by the driver. It is conceded that there was no one in the wagon; that the horse was not tied and that he was

not attended, except that the driver and another person, who were loading the wagon, were on the sidewalk or passing from the building to the wagon at the curb. There was proof on the part of the defendants that the horse was a gentle one, and, in fact, a very quiet and docile horse, and one that had never ran away and never had caused any trouble; that he was not afraid of locomotives or trolleys, and one witness testified that he had left the horse as many as a couple of thousand times, while he delivered goods, without being tied or attended, and that he had never moved. All the witnesses who had driven the horse, who were acquainted with him and his disposition, agreed in that respect.

When the plaintiff rested defendants' counsel moved for a nonsuit, on the ground that the evidence did not disclose any negligent act on the part of the defendants or their employes, which motion was then refused, and subsequently, with the consent of the court, counsel renewed his motion, upon the additional ground which he stated as follows: "That the plaintiff, by riding along so close to this horse, which he himself says was unattended, was guilty of contributory negligence which would bar a recovery." The court overruled this motion on both grounds. If the second point is a good ground to defeat a recovery, it was not a good ground for a nonsuit, because whether the plaintiff did ride so close as to be guilty of contributory negligence was a question for the jury. As to the first ground, our conclusion on the other assignments makes it unnecessary to express an opinion.

There are a number of assignments founded on exceptions to the charge of the court and to refusals to charge. Only two need be considered, the others being, in our judgment, without substance.

The assignments are founded upon the refusal of the court to charge the following request: "It is not negligence for the driver of a quiet, gentle horse to leave him untied and otherwise unattended on the side of a public highway, while the driver is upon the sidewalk loading goods in the wagon," and the charging by the court as it did charge on this subject,

which was as follows: "But the question will be. was the leaving of the horse untied, under the circumstances disclosed by the evidence in this case, a negligent act?"

The refusal to charge as requested and the charge as the court did charge was a practical statement to the jury that they might find negligence in the defendants from the mere fact that they left the horse standing in the public highway untied, while the driver was upon the sidewalk, loading and unloading goods. The request, it will be noticed, was that it was not negligence for the driver of a quiet, gentle horse to leave him untied and otherwise unattended while the driver was on the sidewalk, &c. The charge was much more narrow than the request, for the court left it to the jury as to whether the mere fact of leaving a horse untied upon the highway was not a negligent act.

In an examination of the authorities applicable to this case I have been unable to find any case which holds that it is within the province of a jury to find it to be a negligent act to leave untied upon the public highway a kind and gentle horse. It is, certainly, standing alone, not a fact from which negligence may be found in the defendants. Whether it is negligence will depend upon many other circumstances; such as the proximity to the untied horse of an attendant, and the character of the place and the circumstances and surroundings at the place where the horse may be left. When this case was closed and the court submitted it to the jury the evidence was uncontradicted that the horse of the defendants was a kind and gentle horse, accustomed to stand, without being tied, in the public streets. The defendants had a right, upon the question of their negligence in leaving the horse untied, to insist that the jury, in considering that question, should take into account the fact that the horse was a quiet, gentle horse, but the only thing the court submitted to the jury was whether the leaving of a horse untied, under the circumstances disclosed by the evidence in this case, was a negligent act on the part of the defendants. This practically took from the jury all reference to the fact that the horse was a kind and gentle

horse, and the benefit of that fact to the defendants upon the question of their negligence in thus leaving their horse. ·A careful reading of the charge of the court fails to find any reference to the fact that the horse was a quiet, gentle horse, and the court entirely ignored that request.

An examination of the English and American authorities sustain the rule as here stated.

In an action for an injury resulting from a porter leaving a horse untied, while he carried articles of furniture from his cart into a house, Lord Kenyon said:

"He was performing his duty while removing the goods into the house, and if every person who suffered a cart to remain in the street, while he took goods out of it, was obliged to employ another to look after his horse, it would be impossible for the business of the metropolis to go on." He directed a nonsuit. *Hayman* v. *Hewitt, Peake N. P.* 170.

The decision most frequently cited as a correct statement of the rule in cases of this character is that of the Supreme Court of Minnesota, in which the court says:

"The degree of care required of the plaintiff, or those in charge of his horse at the time of the injury, is that which would be exercised by a person of ordinary care and prudence under like circumstances. It cannot be said that the fact of leaving the horse unhitched is, in itself, negligence; whether it is negligence to leave a horse unhitched must depend upon the disposition of the horse; whether he was under the observation and control of some person all the time, and many other circumstances, and is a question to be determined by the jury from the facts in each case." *Griggs* v. *Fleckenstein,* 14 *Minn.* 81, 96.

The Court of Appeals of New York use this language:

"There is no absolute rule of law that requires one who has a horse in a street to tie him or to hold him by the reins. It would doubtless be careless to leave a horse in a street wholly unattended without tying him to something; but it is common for persons doing business in streets with horses to leave them standing in their immediate presence while they

attend to the business, and it is not unlawful for them to do so. It is commonly safe so to do, and accidents are rarely occasioned thereby. There was no proof that this horse was vicious, unsafe or unmanageable. * * * He [the driver] was near his horse, and might expect, in an emergency, to control him by his voice or to reach him before he could escape." *Wasmer* v. *Delaware, Lackawanna and Western Railroad Co.,* 80 *N. Y.* 212, 217.

There are no cases in our own state to aid us in determining this question. That horses are left standing upon the public street, in the manner that the horse of the defendants was, while the vehicles to which they are attached are being loaded, is a matter of common observation, and the business of this modern age could hardly go on if it were otherwise.

If a kind and gentle horse, left unattended upon the street, where it may rightfully be, and which has no known vicious propensities, bite or kick a person, there can be no recovery. It is only when the animal is wrongfully where the injury is done. *Reed* v. *Southern Express Co.,* 51 *Am. St. Rep.* 62; *Clowdis* v. *Fresno, &c., Irr. Co.,* 62 *Id.* 238.

The horse that did the injury in this case was standing while his attendant was discharging his load. The vehicle to which it was attached was in front of the business place of the defendants, where it was customary and necessary for it to be, and with this custom and location the plaintiff was perfectly familiar. The horse is proven to have been a kind and gentle one, and no vicious act is pretended; the most it did was to step slightly to the left and, as one witness says, return to its position again immediately, and it did not move away, even after the plaintiff claims he had been struck. Wherein is the negligence of the defendants? It will not do to say that the owner of a kind and gentle horse, used in his business, cannot leave such a horse unattended other than by the driver thereof being upon the sidewalk, at the rear of the wagon, loading and unloading goods.

The necessities of modern business preclude such a determination.

The judgment is reversed.