RAYMOND BRESLIN, an Infant, by JOHN BRESLIN, His Guardian ad Litem, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 28163.)

Court of Claims, July 28, 1947.

*Albert Martin Cohen* for claimant.

*Nathaniel L. Goldstein, Attorney-General* (*Arthur W. Mattson* and *Sidney B. Gordon* of counsel), for defendant.

LOUNSBERRY, J. On April 8, 1946, the claimant, Raymond Breslin, then sixteen years of age, was an inmate of the New York State Training School for Boys at Warwick, New York, an institution for delinquent boys. That day at his own request, he was assigned to work under the painting instructor, D. Emory Culver, who instructed the boys under him in general painting work around the school premises.

The paint shop occupied two rooms of a rectangular, one-story wood structure, which housed a number of school shops. One room was a classroom and finishing room; the other served for storage and mixing of colors and oils, and as a place for the boys to clean up after painting. Not far inside the outside door of the latter room stood a fifty-gallon size metal drum which served as a trash barrel. The principal storage of paints was in a separate structure.

On the day in question, a Monday, at about 4:30 in the afternoon, the instructor returned with two boys to the storage room to clean up. He received a call from the school office to come and get the claimant, who had just received his assignment. He did so, returning in company with claimant to the shop about five minutes later. As he entered he saw a fire burning in the trash barrel and immediately tried to move the barrel out of the building. Claimant endeavored to assist. Unfortunately, the barrel tipped over, and the instructor was enveloped in flame and severely burned. The claimant testified that he pushed the instructor out the door but then found the only exit blocked and was forced after some difficulty to break a window in the classroom through which he escaped. He received fairly severe burns and now claims damages, asserting various types of negligence on the part of the State.

There is dispute as to whether the instructor ordered the claimant to assist him in removing the blazing barrel. The claimant says that the instructor did tell him to help; the instructor insists that he did nothing of the sort, and in fact did not know where the claimant was, except that he thought he had followed him into the building. On the whole, the instructor's testimony is more positive and consistent on this point, but in any event, in the view we take of this case, this dispute need not be resolved. The other boys, incidentally, had run out, with or without orders.

The claimant's attorney discovers all kinds of negligence: the construction of the building, the lack of exits, the storage of combustible materials, the failure to call the school fire department, and others too numerous to mention. All are irrelevant, we believe, and for the most part unsupported by the testimony, with one outstanding exception, namely, the accumulation of waste in the trash barrel. On the testimony of the State's own witnesses it appears that oily cleaning rags, turpentine and other waste materials were thrown in this barrel; that it was the instruction of the school authorities that the barrel be emptied whenever there was any slight accumulation of such waste

material in it; that it was the practice of the maintenance foreman to visit all of the shops every day to see that regulations were observed; that it was customary to empty the barrel at least every Saturday, but that in this instance it had not been emptied for at least nine days. The defense was that such action was unnecessary in this particular case because during the preceding week the boys had been working outside the shop. It, nevertheless, appears that they came there to clean up twice daily and that some waste materials, such as cleaning rags, oil and turpentine, were thrown in the barrel. The instructor did not inspect it the Saturday preceding the fire, which occurred on Monday.

The State argues at some length that there is a lack of causal connection between any alleged omissions by the State and the fire and the resulting injuries, but with this we cannot agree. While the exact cause of the fire was never established, it seems a reasonable conclusion that it would not have occurred had the barrel been emptied frequently of such materials, in accordance with orders. An accumulation of such material was an invitation to fire by spontaneous combustion, or through carelessness with matches or cigarettes. We are of the opinion that the State was negligent in this respect and that such negligence resulted in the fire. The other assignments of negligence, even if proved, may be disregarded because none of the situations complained of caused the fire, and because their correction would not have prevented this particular accident.

There remains the important question whether the claimant was guilty of contributory negligence. The State urges that his unsolicited act, assuming it was unsolicited, in attempting to help remove the blazing barrel from the building, or even in entering the building at all, seeing the fire, constituted gross negligence on his part, barring his recovery. With this we cannot agree. He was in the custody of the instructor, and, receiving no order to the contrary, followed him into the building. Thus far, his action was normal and proper. Then the instructor seized the barrel and hurriedly attempted to put it out the door. It was heavy, and its removal was further complicated by the fact that it rested in a box of cinders. Speed was of the essence. The claimant naturally rushed to help. His action was risky, perhaps, but not, we think, negligent.

It seems to us that the State is in effect saying that the claimant, upon perceiving the danger, should forthwith have run away, leaving the instructor to shift for himself with the blazing barrel as best he might, whatever the conséquence to him or to

the school building. We do not propose to countenance any such cowardly proposition, and do not believe it to represent the law. The boy, whatever his previous and subsequent record, did the natural and manly thing in attempting to help. Had the joint endeavor been successful, undoubtedly he would have been commended for his quick thinking and bravery. But the barrel tipped over, so, instead, he is guilty of contributory negligence.

The court said in *Wagner* v. *International Ry. Co.* (232 N. Y. 176, 180): " Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal. It places their effect within the range of the natural and probable. The wrong that imperils life is a wrong to the imperilled victim; it is a wrong also to his rescuer. The state that leaves an opening in a bridge is liable to the child that falls into the stream, but liable also to the parent who plunges to its aid (*Gibney* v. *State of N. Y.*, 137 N. Y. 1). The railroad company whose train approaches without signal is a wrongdoer toward the traveler surprised between the rails, but a wrongdoer also to the bystander who drags him from the path (*Eckert* v. *L. I. R. R. Co.*, 43 N. Y. 502. Cf. *Matter of Waters* v. *Taylor Co.*, 218 N. Y. 248). The rule is the same in other jurisdictions (*Dixon* v. *N. Y., N. H. & H. R. R. Co.*, 207 Mass. 126, 130, and *Bond* v. *B. & O. R. R. Co.*, 82 W. Va. 557, with cases there cited. Cf. 1 Beven on Negligence, 157, 158). The risk of rescue, if only it be not wanton, is born of the occasion. The emergency begets the man. The wrongdoer may not have foreseen the coming of a deliverer. He is accountable as if he had (*Ehrgott* v. *Mayor, etc., of N. Y.*, 96 N. Y. 264, 280, 281)."

The doctrine thus stated is well established. (*Eckert* v. *Long Island Railroad Co.*, 43 N. Y. 502; *Rexter* v. *Starin*, 73 N. Y. 601; *Wasmer* v. *Delaware, Lackawanna & Western R. R. Co.*, 80 N. Y. 212; *Spooner* v. *Delaware, Lackawanna & Western R. R. Co.*, 115 N. Y. 22; *Gibney* v. *State of New York*, 137 N. Y. 1; *Wardrop* v. *Santi Moving & Express Co.* 233 N. Y. 227; *Rague* v. *Staten Island Coach Co.*, 288 N. Y. 206; 1 Warren, Negligence in the New York Courts, pp. 135–137.) As summarized by the Restatement of the Law of Torts (Vol. 2, § 472) " It is not contributory negligence for a plaintiff to expose himself to danger in a reasonable effort to save a third person or the land or chattels of himself or a third person from harm."

The doctrine extends, we feel certain, to the instant situation. The blazing barrel presented potential danger to both life and property. Immediate action was necessary. The action taken was natural, and reasonably calculated to eliminate the danger. We find no contributory negligence on the part of claimant under the circumstances.

If in fact the instructor did tell the claimant to assist him the result is no different. In such case the claimant acted at the direction of his lawful custodian, a State employee, and contributory negligence could not reasonably be charged against him in that situation. (*Lee* v. *State of New York*, 187 Misc. 268, 282.)

This claim was filed in the office of the Clerk of the Court of Claims at Albany, New York, on May 25, 1946, and has not been assigned or submitted to any other court or tribunal.

The claimant is therefore entitled to an award. His injuries consisted of first and second degree burns of both hands and his face, and cuts on his right leg. The medical testimony establishes that the burns have healed or will heal completely, and that the only permanent effects are a small scar on the left thumb and two scars on the right leg. He did suffer a great deal of pain and spent about a month in the hospital. For scars, pain and suffering an award of $2,500 is hereby made.

Let judgment be entered accordingly.