Mark Luce, Respondent, *v.* Laura Hartman, Appellant.

Fourth Department, December 5, 1957.

*Joseph Brownstein* for appellant.

*G. Sydney Shane* for respondent.

Vaughan, J.   This appeal by defendant from a denial of his motion for dismissal of plaintiff's complaint and from a judgment in favor of the plaintiff in the sum of $5,150.77 raises two questions:   First, were defendant's acts the proximate cause of plaintiff's injuries, and second, was plaintiff free from such

contributory negligence as would bar his recovery from defendant?

The facts essentially are as follows: The plaintiff has owned and operated his farm of 315 acres in Cattaraugus County for 41 or 42 years. A highway from New Albion to Leon runs alongside part of this farm used by plaintiff as a pasture for his dairy cattle. On September 10, 1955, between 8:30 and 9 o'clock in the evening, defendant was driving her automobile along this highway at approximately 30 miles per hour. It had been raining quite hard and the road was slippery. After rounding a left-hand curve in the highway, defendant's car left the pavement and crashed through a barbed wire fence into plaintiff's pasture. Eleven fence posts set practically 12 feet apart were town down by the car's passage.

The defendant saw the cows in the pasture and observed that at no time during the sequence of events had any of them wandered out of the pasture. Defendant drove to the plaintiff's farmhouse, informed him of the accident and drove him to the scene, a distance of about one-quarter mile. Plaintiff stated that he had 32 cows in the pasture and had to do something to keep the cows from going out onto the highway. Mr. Milks and his son who happened to be passing by offered to help plaintiff move the cows, Mr. Milks saying that he would shine his car headlights into the pasture. Defendant also offered her assistance but plaintiff refused.

Plaintiff began driving the cattle toward a night pasture near the farmhouse. During this time, Mr. Milks moved his car three or four times to allow traffic to pass, leaving plaintiff in total darkness for two or three minutes at a time. Plaintiff, however, continued to move during these intervals despite his inability to see. While he was thus in total darkness and at a distance of between 75 and 100 rods from the point at which the fence was broken, plaintiff fell into a hole, sustaining the injuries for which this action was brought. Plaintiff at first denied any knowledge of the hole's presence but on further questioning, admitted that he knew there was a washout that he would have to step across. He also stated that he was hurrying when he fell into the hole which was seven feet deep and seven feet wide. Plaintiff had no lantern or flashlight with him.

Plaintiff asserts that he was acting in the role of a rescuer at the time of his injury. This so-called rescue idea has no foundation in the evidence.

Paragraph Fourth of the complaint alleges that following the collision in question plaintiff's " said cattle became frightened

and ran through the opening in said fence, caused by the defendant, onto the public highway adjacent thereto and across the said highway into the fields and pastures adjoining said highway '' and that when plaintiff arrived at the scene '' he discovered his said cows wandering aimlessly in the dark along said highway and in the pastures and fields adjacent thereto '' and that while attempting to corral said cattle he fell into a large hole in a field adjoining the highway. Similar allegations are found in the Fifth paragraph of the complaint and in the bill of particulars. Absent any testimony to support said allegations, we can only suspect that they were for the purpose of invoking the rescue doctrine, the emergency rule and to fortify against any claim of contributory negligence on the part of the plaintiff as well as to nullify the application of the proximate cause rule.

It is also urged by plaintiff that defendant's negligence was the proximate cause of his injury. Defendant controverts both these allegations and asserts that, in any event, plaintiff is barred from recovery by his own contributory negligence.

In the case of *Palsgraf* v. *Long Is. R. R. Co.* (248 N. Y. 339) the Court of Appeals established the pattern for the New York attitude toward proximate causation when it stated (p. 344): '' The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension ''. Such a test is broad and necessarily vague but it does differentiate two approaches to the issue of liability. Rather than the test advocated by Judge ANDREWS in his dissenting opinion in *Palsgraf* (conduct fraught with unreasonable probability of *some* harm to *somebody,* then the duty to refrain is owed to anyone who in fact is hurt), it indicates that liability for actionable negligence must lie within the range of natural and probable consequences (*Cartee* v. *Saks Fifth Ave.,* 277 App. Div. 606). A person cannot be held liable in negligence for failing to provide against a danger he could not reasonably have foreseen (*Payne* v. *City of New York,* 277 N. Y. 393). The test of actionable negligence is what a reasonably prudent and careful person would have done under the circumstances in discharge of his duty to the injured person and does not embrace the failure to guard against a remote possibility of accident or one which could not in the exercise of reasonable care have been foreseen (*Yusko* v. *Remizon,* 280 App. Div. 637). Only reasonable foresight and not prophetic vision is required (*Cartee* v. *Saks Fifth Ave., supra*).

In applying the broad standard set forth to the peculiar facts of each individual case, the New York courts limit liability to cases in which the intervening causes lie within the scope of foreseeable risk or have at least some reasonable connection with it, since otherwise a defendant could be held when any one of an unlimited number of independent causes intervene. This, of course, is applicable only when the initial act of the defendant is admittedly negligent and the plaintiff attempts to show his liability for some remote result. If the likelihood of the intervening act was one of the hazards that contributed to making the defendant's act negligence — i.e., if it was sufficiently foreseeable for this — then defendant should be liable for plaintiff's injury. If, on the other hand, it is not closely and reasonably associated with the immediate consequences of the defendant's act, then it may be regarded as without the scope of the risk created. If the intervening act happens to be an act described as a '' rescue '' and such act is itself unreasonable or is done in an unreasonable manner, it should amount to contributory negligence which will bar recovery by the actor. Before the act should be deemed a '' rescue '' in its proper sense, there should be the condition of immediacy and urgency which the court found in *Wagner* v. *International Ry. Co.* (232 N. Y. 176) where a life hung in the balance. The Court of Appeals therein reviewed the history of New York cases concerning '' the cry of distress '' wherein '' the emergency begets the man.'' Fundamental in all the cases (*Gibney* v. *State of New York*, 137 N. Y. 1; *Eckert* v. *Long Is. R. R. Co.*, 43 N. Y. 502; *Breslin* v. *State of New York*, 189 Misc. 547) is the presence of an emergency which makes the human reaction an act which is reasonably foreseeable.

The negligence of the defendant-appellant in leaving the highway and striking the fence is not seriously contested. No question is raised as to her liability for the property damage which followed. Phrased in terms of foreseeability, the defendant reasonably could expect that her negligence would cause property damage, that it created a risk to anyone who might be standing at the edge of the road, and that someone might be injured in helping her get her automobile back on the highway. All of these would have been caused actually and proximately by her negligent lack of control over her vehicle. There is a serious difference, however, in attempting to extend the causation to create liability for injuries sustained by a farmer who was trying to cross a pasture which he knew contained a hazardous hole without adequate light. This act by the farmer was an independent intervening act, undertaken by a man fully aware

of the circumstances. It is difficult to imagine that such conduct could be called anything but negligent.

There are, therefore, two considerations: First, whether defendant's negligence can be said to extend to this remote injury as a proximate cause and, second, even if it does extend that far, whether plaintiff would not be barred from recovery by his own contributory negligence.

As mentioned above, liability for the results of negligence exists only when a causal chain exists and when the injury is not too remote. The defendant's negligence caused a substantial amount of damage and this was reasonably foreseeable when she allowed her car to leave the highway. She could not foresee, however, that the owner of the property on which she drove her car would fall into a hole on his own property. There is no question that her negligence was the "actual" cause since it fulfills the "but for" test adopted by the courts. It is not, however, the kind of risk for which defendant should be held liable because it was far too remote from his original act — i.e., it was not the "proximate" cause.

If, however, some sort of reasonable connection were established, there still can be no question that plaintiff's attempt to cross the pasture without light when he was aware of the dangerous conditions, was negligence which contributed directly to the resultant injury. He was on his own property, he was aware that the hole existed and that he could injure himself if he inadvertently stepped into it and he nevertheless set out to walk the quarter of a mile to his farmhouse while he was unable to see where he was going.

To avoid the inevitable conclusion that he was contributorily negligent, the plaintiff claims that he acted in the role of a rescuer, protecting his property from a danger created by the defendant's negligence. There is no question that the large gap in the protective fencing would have allowed the cows to wander onto the highway and onto other people's property. This might even have been probable if nothing was done to prevent it. The record shows, however, that the gap in the fencing was blocked temporarily by Mr. Milks' car. The defendant also had expressed her willingness to help in any way she could. There was not, therefore, an emergency in the sense that something had to be done without delay and without further preparation. Plaintiff could have taken time to equip himself with a flashlight or a lantern but he chose not to do so. The whole fact situation is distinguishable from the emergencies such as a child falling into a stream, a person falling off a train, a blazing barrel inside a building and a person in the

path of an oncoming locomotive. These are truly emergencies, requiring immediate action, and the contributory negligence of the bystander who undertakes the rescue cannot bar recovery. There is no such immediacy in a situation where cows, if left over night, might wander out of a pasture. Plaintiff, knowing of the dangers existing in the pasture, could have taken time to prepare himself properly with adequate light. His failure to do so cannot be excused on the theory that he acted as a rescuer.

Thus, defendant is not liable for plaintiff's injuries; first, because the injury is too remote from any negligence on defendant's part and, second, because plaintiff was contributorily negligent in any event.

The judgment appealed from should be reversed as a matter of law, and the complaint dismissed.

All concur. Present — McCurn, P. J., Vaughan, Williams, Bastow and Goldman, JJ.

Judgment reversed on the law, with costs, and complaint dismissed, with costs.