Peter TROTT a/k/a "John Doe", Plaintiff,

v.

DEAN WITTER & CO., Defendant.

No. 77 Civ. 301.

United States District Court, S. D. New York.

Oct. 12, 1977.

Kevin J. Cullen, New York City, for plaintiff.

Jackson & Nash, New York City, for defendant; Lawrence P. McGauley, Ronald S. Herzog, New York City, of counsel.

## MEMORANDUM

LASKER, District Judge.

In 1976, Peter Trott was employed by Holiday Press, which entered into a printing contract with Imar Publications. Imar failed to make payment under the contract and Trott, acting upon instructions from his superiors, further cultivated the acquaintance of Jerry Franzese, the employee he dealt with at Imar, in the hope of eventually being able to recover his company's money. In the course of this acquaintance, Trott was introduced by Franzese to his cousin, Joey Franzese, who informed Trott that he held an important job at Dean Witter and that he could let Trott in on a scheme through which Trott would recover the money lost in the Imar contract. Joey Franzese occupied a position on the Margins Desk at Dean Witter, where he was able to negotiate transactions resulting in payments of money to fictitious accounts, whose proceeds Joey Franzese himself would appropriate. Franzese showed plaintiff a check for over half a million dollars which allegedly was the product of one of these transactions. Trott states that, in response to an invitation to join their operation, he considered but rejected the possibility of simply refusing their suggestion, that is, either informing Dean Witter of the scheme or washing his hands entirely of the affair. (Plaintiff's Affidavit at 5–6) Fearful that the company would not believe his accusation against an upper-level employee and disturbed also that the Franzeses, whom he believed to be connected with organized crime, would not let him walk away unharmed with such information, Trott decided to go along with the plan until a more appropriate occasion arose to unmask the criminals. He admits that he was motivated in large part by personal factors—the expectation that he would receive governmental protection if he later testified against the Franzeses with proof of their crimes and that Dean Witter would reward him—and by simple moral outrage that the two men should be allowed to continue a criminal course of conduct, which had already resulted in the defrauding of his own employer. (Plaintiff's Affidavit at 7–8)

Trott therefore participated in a scheme in which Joey Franzese issued two checks, totalling over $275,000, from Dean Witter's account. As the fraud reached its final stages, Trott contacted Federal authorities. They promised him protection if he would continue to cooperate with the Franzeses long enough for the government to secure evidence to convict them. He agreed and shortly afterward, with Trott's help, the Franzeses were convicted, and the loss of Dean Witter's money was prevented. Throughout the months between Trott's first learning of the plan and the Franzeses' arrest, however, Dean Witter knew nothing of plaintiff's action. Nevertheless, Trott, who has suffered considerable distress as a result of a change of identity and relocation through the Federal Witness Relocation Program (including a halving of his income), seeks to recover damages from the company. He argues that he is entitled to recovery in quasi-contract, or on the basis of one of two alternative tort theories. Dean Witter moves to dismiss the complaint or for summary judgment. While Trott has presented a comprehensive brief in support of his position, we find that the law and the undisputed facts bar recovery on each of these three theories and that the motion for summary judgment should be granted.

Plaintiff argues first that he is entitled to damages from defendant in quantum meruit. Recovery in quantum meruit rests on a narrow exception to the rule that a party may not expect compensation for a benefit conferred gratuitously upon another. Williston, *Treatise on Contracts,* § 36A at 106–07 (3d Ed. 1970). The parameters of this cause of action are set out in § 117(1) of the Restatement of Restitution, which plaintiff cites in his brief along with a number of cases which illustrate the standards of the Restatement.[1]

---

1. We do not consider the cases cited by plaintiff dealing with recovery from an estate for services rendered to the decedent. These cases offer clear evidence of consent on the part of

The facts of this case, as admitted by plaintiff, however, distinguish it significantly from the authority cited by him. At no time did Dean Witter expressly or implicitly consent to Trott's actions, nor did any fiduciary relationship exist between the two parties. Defendant therefore argues that Trott was merely a volunteer and cannot be awarded relief in quasi-contract. Certainly no consensual agreement was present here, and Trott's situation does not meet the standards set out in the Restatement relating to quantum meruit recovery when consent is not present. He cannot claim that it was "reasonably necessary" for him to render his services "before it was possible to communicate" with Dean Witter (Restatement § 117(1)(b)) since a period of over two months elapsed from the time Trott joined the plan until the company was alerted. The cases he cites indicate that a greater practical obstacle to communication is intended by this provision than Trott's subjective fear that his story was not credible or that he would be endangered. *Hartford Fire Insurance Company v. Albertson,* 59 Misc.2d 207, 298 N.Y.S.2d 321 (Wschr. Co. Ct., 1969). *Chase v. Corcoran,* 106 Mass. 286 (1870).[2] Nor can we accept Trott's claim that he had "no reason to believe that the owner did not desire him so to act" (Restatement § 117(1)(c)), since Dean Witter points out, with good reason, that the prolongation of the scheme, which represented to plaintiff a chance for federal protection and a reward, placed the company in great danger. While we sympathize with the anxiety felt by Trott upon being confronted with the Franzeses' scheme, we find, as a matter of law, that the course of

action which he chose to follow is not one which permits recovery in quantum meruit.[3]

In reaching this conclusion, we reject plaintiff's claim that he cannot be considered an officious intermeddler because he acted during an emergency. (Plaintiff's Memorandum of Law at 11–12) Whether an emergency exists cannot be measured from the subjective standpoint of one of the parties, as Trott suggests (Plaintiff's Memorandum at 12), and we do not agree that his only alternative upon learning of the scheme was to cooperate with it. It is inconceivable that Dean Witter would have turned a deaf ear to information involving a potential loss of vast amounts of money. And, even if Trott were justified in thinking that the threat of violence from the Franzeses was enough, by itself, to create an emergency, this situation was of plaintiff's own creation in pursuing his acquaintance with the two men independently of any action by Dean Witter. At the least, he could have gone to the F.B.I. as he later did.

Trott also argues that he should be granted damages from Dean Witter under the tort doctrine that "danger invites rescue." This doctrine is designed to compensate those who rescue others from self-inflicted danger. However, it is not applicable to the facts of this case. The rationale for the doctrine is that ordinary standards of negligence should not be applied to the actions of one responding to a situation of great danger, which requires an instantaneous decision as to how to act. Plaintiff cites the language of Judge Cardozo in

the recipient of the services, which is totally lacking in *Trott.* We also find inapposite the reference to Judge Jasen's dissent in *Kraut v. Morgan & Brother Manhattan Storage Co.,* 38 N.Y.2d 445, 381 N.Y.S.2d 25, 343 N.E.2d 744 (1976). Not only is a dissenting opinion of dubious authority, but the analogy to a ransom situation is inappropriate since Dean Witter never asked to have a ransom paid on its behalf.

2. In *Albertson* and *Chase,* the party seeking recovery was unaware of the identity of the property owner, thus rendering communication impossible.

3. Plaintiff states that a question of fact exists as to whether he was reasonable in expecting to be compensated by Dean Witter, relying for this proposition on *Fitzgerald Construction Co. v. Fitzgerald,* 137 U.S. 98, 105, 11 S.Ct. 36, 34 L.Ed. 608 (1890). In *Fitzgerald,* a substantial question was raised as to whether an officer of a railroad company was acting within the scope of his employment in endorsing certain notes. Here, where a critical element to a showing of quantum meruit is lacking, e. g., consent or circumstances justifying failure to receive consent, we do not find it necessary to resolve this question of fact.

*Wagner v. International Ry. Co.,* 232 N.Y. 176, 133 N.E. 437 (1929), which explains this point:

> "'Errors of Judgment,' however, would not count against [Plaintiff], if they resulted 'from the excitement and confusion of the moment' . . . The reason that was exacted of him was not the reason of the morrow. It was reason fitted and proportioned to the time and the event."

Similarly, all the cases cited in plaintiff's brief for this proposition involve split-second decisions by the injured parties.[4] Here, where Trott had a period of months to determine his best course of action in regard to the Franzeses' plan, his action can be judged according to a stricter standard than that set out in the "danger invites rescue" doctrine. Accordingly, we reject his claim to recover on this ground.

▪ The final theory invoked by plaintiff is the "two innocents" doctrine. Based on common law principles of equitable estoppel, this doctrine states that "where one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss, must sustain it." *National Safe Deposit Co. v. Hibbs,* 229 U.S. 391, 394, 33 S.Ct. 818, 819, 57 L.Ed. 1241 (1913); *Bunge Corp. v. Mfrs. Hanover Trust Co.,* 31 N.Y.2d 223, 335 N.Y. S.2d 412, 286 N.E.2d 903 (Ct.App.1972). This theory, too, is inappropriate. Both *National Safe Deposit* and *Bunge,* the authorities cited by plaintiff, involved defendant companies that had employed individuals responsible for defrauding innocent third parties. As between the employer and the third party, the courts held that the employer, who hired the perpetrator of the wrongdoing, should bear the loss. Trott's position differs in several respects from that of the plaintiffs in those two cases. In *National Safe Deposit* and *Bunge,* the plaintiffs were involved in business transactions with the defendant employer; their acquaintance with the employees responsible for the fraud was made possible only through their course of dealing with the employer. In no sense can Dean Witter be considered to have held out its employee to Trott as a trusted agent in the way the defendant companies in those cases did. Trott never had any contact with Dean Witter. He made the acquaintance of the Franzeses independently of the company, and he decided to go along with the plan for largely personal reasons. Through his independent action, Trott, as distinct from the plaintiffs in the authority he relies on, directly enabled the employee (Franzese) "to occasion the loss." Nor can Trott truly be considered an innocent party in the same sense that the parties in *National Safe Deposit* and *Bunge* were. In those cases the plaintiffs were altogether unaware that any wrongdoing was contemplated. Trott, on the other hand, was aware of the scheme from the outset. Rather than withdraw from it at a time when his involvement or "services" were minimal, he deliberately chose a course of conduct which would lengthen those "services" and ensure him federal protection. While the consequences of this protection have proven drastic, Trott may not now claim that Dean Witter is responsible. Without denying the difficulty of the position Trott was placed in upon receiving the Franzeses' alarming invitation, we do not find that any of the three arguments he has made constitutes a ground for shifting his loss to Dean Witter.

Defendant's motion for summary judgment is granted.

It is so ordered.

---

4. E. g., *Wagner v. International Ry. Co.,* 232 N.Y. 176, 133 N.E. 437 (1921) (man injured while attempting to rescue cousin's body from oncoming railway car); *Talbert v. Talbert,* 22 Misc.2d 782, 199 N.Y.S.2d 212 (1960) (son rescues father from suicide attempt); *Breslin v. State,* 189 Misc. 547, 72 N.Y.S.2d 62 (1947) (inmate of state facility for delinquent boys attempts to put out classroom fire).