[636 NYS2d 271]

Marisela Gomez, an Infant, by her Mother and Natural Guardian, Belen M. Gomez, et al., Appellants, v New York City Housing Authority, Respondent.

First Department, December 21, 1995

## APPEARANCES OF COUNSEL

*Robert C. Agee* of counsel *(Fitzgerald & Fitzgerald, P. C.,* attorneys), for appellants.

*Alan Kaminsky* and *Angelo Rios* of counsel *(Wilson, Elser, Moskowitz, Edelman & Dicker,* attorneys), for respondent.

## OPINION OF THE COURT

Tom, J.

Plaintiffs appeal from a judgment, entered pursuant to a jury verdict, dismissing plaintiffs' claim of negligence against defendant for failing to provide adequate security in an apartment building where the infant plaintiff was sexually assaulted.

The underlying personal injury action arises out of an incident which occurred on April 20, 1991 in the building designated as 680 Tinton Avenue, Bronx, New York, which is located in the John Adams Housing Project. Defendant New York City Housing Authority (the Housing Authority) owns and manages the complex.

Plaintiff served a timely notice of claim in which she asserted that at approximately 11:30 A.M. on the day in question, she had entered the lobby of the building and was waiting near the elevator when she was first approached by the perpetrator. Plaintiff, who was 12 years old at the time, averred that the perpetrator followed her off the elevator on the 18th floor (where her apartment was located) and thereafter forced her to the roof, where he raped and robbed her. Plaintiff contended that the incident occurred due to the Housing Authority's negligence, carelessness and recklessness in maintaining and repairing the perimeter locks, in failing to establish and maintain minimum security measures, and in failing to warn tenants of criminal activity.

Plaintiff subsequently commenced this action by the service of a summons and verified complaint which alleges, *inter alia*, that the perpetrator entered the building through a defective rear door which the Housing Authority was aware had been broken for a long period of time but elected not to repair. Defendant, on the other hand, averred that plaintiff knew her attacker, that he was a friend of plaintiff's family, and that he entered the building on the morning in question through the front door accompanied by plaintiff, thereby negating any liability based upon the Housing Authority's purported negligence.

At the conclusion of trial, the jury returned a unanimous verdict in favor of defendant and judgment was subsequently entered thereon.

Plaintiff contends that despite overwhelming evidence educed at trial and a "powerful prima facie case", the trial court eviscerated her proof by improper evidentiary rulings.

Plaintiff initially argues that the IAS Court erred when it allowed the testimony of two of defendant's witnesses whose names were not furnished in response to plaintiff's discovery demands, pursuant to CPLR 3101. Those witnesses, Denise Mallette and Doreen Smith, testified, *inter alia*, that plaintiff entered the building on the morning in question, through the front door, with her brother and a third individual who matched the description of the attacker. Both witnesses further testified that the three individuals obviously knew one another and that they had previously seen the third, unidentified person. Ms. Smith added that she had previously seen the unidentified individual in the company of plaintiff's family.

Plaintiff asserted that it was during defendant's opening statement that plaintiff first learned that the two witnesses would be testifying concerning the fact that plaintiff knew her attacker. As a result, after completion of her case, plaintiff moved to preclude their testimony, or for the court to order depositions, after which the trial could resume. Defendant maintained, *inter alia*, that plaintiff had already rested, that it was not required to provide the substance of their testimony in advance, and that they were not "occurrence" witnesses and, therefore, did not have to be disclosed. The trial court denied the motion to preclude and to take depositions but directed defendant to submit any statements taken from the witnesses.

Plaintiff's combined demand for discovery, served upon defendant pursuant to CPLR article 31, demanded the names and addresses of each person claimed to be a witness to the following:

"1. The occurrence alleged in the complaint; answer or bill of particulars;

"2. Any acts or conditions which have been alleged as causing or contributing to the occurrence alleged in the complaint, answer or bill of particulars * * *

"3. The nature and duration of the conditions which allegedly caused or contributed to the occurrence alleged in the complaint, answer or bill of particulars;

"4. Any actual notice given to the plaintiff(s) or claimed to be given to the plaintiff(s) concerning acts or conditions set forth in the complaint, answer or bill of particulars;

"5. Any eyewitness to any claimed act of culpable conduct by the plaintiff(s).

"6. If any affirmative defense is alleged, state the names and addresses of any witnesses to the acts, notice or conditions substantiating the alleged affirmative defense."

■ There is no dispute that plaintiff was entitled to disclosure of the names and addresses of Ms. Mallette and Ms. Smith (*see, Hoffman v Ro-San Manor*, 73 AD2d 207; *Humiston v Rochester Inst. of Technology*, 195 AD2d 961) and we reject defendant's narrow construction of the disclosure requirement whereby it argues that the witnesses were not "occurrence" witnesses because they did not view the actual rape. Clearly, Ms. Mallette and Ms. Smith, having viewed plaintiff enter the building with the alleged rapist, were witnesses to a large part of the circumstances leading to the rape, including the manner in which the assailant may have gained access to the building, that point being the central issue as to liability in this action.

In the matter at bar, however, plaintiff was made aware of the witnesses prior to trial: with regard to Ms. Mallette, her name had been disclosed nearly 10 months before trial and, although her address was not made available until two weeks prior to the trial, plaintiff made no attempt to ascertain the address for $7^1/2$ months, after which time, upon plaintiffs' request, defendant provided the information. Ms. Smith's name and address were disclosed two months prior to the trial.

It is settled that the imposition of sanctions for discovery misfeasance is a matter best left to the trial court's discretion (CPLR 3126; *Tavarez v DeLange*, 190 AD2d 568; *Lowitt v Burton I. Korelitz, M.D., P. C.*, 152 AD2d 506, 507). In viewing the circumstances as a whole, we find plaintiff had actual notice of the witnesses prior to trial. We also find that defendant's failure to notify plaintiff of the address was not willful or contumacious (*Fama v Marchetti*, 215 AD2d 721). As a result, we conclude that the trial court committed no error in denying plaintiff's application for preclusion or a recess to conduct depositions (*see, Tavarez v DeLange, supra*).

■ We do agree with plaintiff, however, that the trial court's admission into evidence of certain testimony of Housing Authority Detective Scott Wagner, the lead police investigator in the case, while refusing to admit the proffered opinion testimony of plaintiff's expert witnesses on the same issue, was error which warrants a new trial.

Detective Wagner was called as a witness by plaintiff and, during direct examination, testified primarily about events concerning his investigation of the incident. Detective Wagner also stated on direct examination that he had no factual information that the perpetrator was known to the plaintiff. On cross-examination, defense counsel attempted to elicit expert testimony from Detective Wagner regarding whether plaintiff

knew her assailant. Upon plaintiff's objection to his qualification as an expert, defendant embarked on a voir dire into Detective Wagner's experience as a police officer.

Thereafter, the court allowed the following to take place:

"DEFENSE COUNSEL: Detective, based upon your investigation into this crime, based upon the information you know from personally being involved in this incident and based upon your expertise as a detective, and having investigated hundreds of crimes in the past, sir, do you have an opinion with a reasonable degree of police certainty as to whether or not the assailant knew Marisela when the crime was committed?

"DETECTIVE WAGNER: My opinion is, my personal opinion, is that they were known to each other in some way, shape or form, *but I have no factual documentation to back that up.*" (Emphasis added.)

After plaintiff's objection, the court urged the witness to focus on whether his opinion "[w]as * * * just surmise or does it have a basis?", to which Detective Wagner simply responded "My personal opinion is that they [she and her assailant] were known to one another." Thereafter, defense counsel posited the following hypothetical culled from the facts of the case:

"Detective, I want to assume the following facts. I want you to assume that the plaintiff was walking home from church after preaching; I want you to assume that the plaintiff often preaches with other members of her church; I want you to assume that the assailant was well dressed, neat, and in his late 20's or early 30's; I want you to assume that her assailant follows the plaintiff off the elevator, takes her up the stairs on to the roof landing where he commits this crime; I want you to assume that there are no similar reported crimes with this modus operandi; I want to you [sic] assume that the plaintiff gives a very thorough description of her assailant, including his height, weight, age, clothes, length of hair, mustache, facial growth.

"Given all those facts, could you tell us if you have an opinion, with a reasonable degree of police certainty again, as to whether the plaintiff was assaulted by someone who knew her?"

Detective Wagner then replied, "[a]gain, that my personal opinion is they were known to one another in some way, shape or form." Detective Wagner also stated during cross-examination that it seemed as if plaintiff "was going through the motions of the investigation" and that plaintiff exhibited some "reluctance" when speaking with him.

Plaintiff subsequently sought to introduce the testimony of two experts: Dr. Ann Burgess, an eminently qualified expert on rape trauma syndrome who, in addition to extensive clinical experience with victims, has lectured and authored books and articles on the subject; and Dr. Rosa Vasquez, an expert in clinical psychology who has expertise comparable to Dr. Burgess and has provided extensive counseling and treatment to rape victims.

Dr. Burgess testified that she evaluated plaintiff on April 11, 1994, approximately three years after the incident. After eliciting testimony that plaintiff suffered from chronic posttraumatic stress disorder, and that the rape trauma caused this syndrome, the following exchange occurred:

"PLAINTIFF'S COUNSEL: Have you ever investigated or treated victims who have known the rapist?

"DR. BURGESS: Yes I have.

"PLAINTIFF'S COUNSEL: In your opinion, is the victim's ability to recall details at all significant as to the issue of whether or not the victim knew the perpetrator?

"DEFENSE COUNSEL: Objection.

"THE COURT: Sustained."

Similarly, Dr. Vasquez was also prevented from testifying as to whether she had an opinion concerning the likelihood that plaintiff might have known her assailant. Plaintiff's counsel inquired "In your experience are there characteristics that distinguish a rape where the perpetrator and assailant are strangers from those where the perpetrator and the victim are known to each other?" The court, after initially permitting the question, reversed itself and directed the jury to disregard the question and Dr. Vasquez' partial answer.

The admissibility of expert testimony on a particular point is a mixed question of law and fact which is addressed primarily to the sound discretion of the trial court. "As a general rule the expert should be permitted to offer an opinion on an issue which involves 'professional or scientific knowledge or skill not within the range of ordinary training or intelligence' " (*Selkowitz v County of Nassau*, 45 NY2d 97, 102, quoting *Dougherty v Milliken*, 163 NY 527, 533; *see also, People v Cronin*, 60 NY2d 430; *Edgewater Apts. v Flynn*, 216 AD2d 53).

The expert who is permitted to testify "should be possessed of the requisite skill, training, education, knowledge or experience from which it can be assumed that the information

imparted or the opinion rendered is reliable" (*Matott v Ward*, 48 NY2d 455, 459; *Daum v Auburn Mem. Hosp.*, 198 AD2d 899; *Matter of Enu v Sobol*, 171 AD2d 302; Richardson, Evidence §§ 366-368 [Prince 10th ed]).

An expert may not speculate nor guess and "[i]t is settled and unquestioned law that opinion evidence must be based on facts in the record or personally known to the witness" (*Cassano v Hagstrom*, 5 NY2d 643, 646; *Hambsch v New York City Tr. Auth.*, 63 NY2d 723; *Lopato v Kinney Rent-A-Car*, 73 AD2d 565). Further, an expert's opinions may not be founded upon surmise or supposition (*Matott v Ward, supra,* at 463; *Nyon Sook Lee v Shields*, 188 AD2d 637; *Interstate Cigar Co. v Dynaire Corp.*, 176 AD2d 699; *Aetna Cas. & Sur. Co. v Barile*, 86 AD2d 362; *Nieves v City of New York*, 91 AD2d 938).

In the instant case, it is clear that Detective Wagner's "opinion" was, in fact, what is often referred to as a "hunch", or, more specifically, impermissible conjecture and speculation, rendering it inadmissible. Further, Detective Wagner made it plain during his testimony that his "opinion" was not based, as it must be, on facts "in the record or personally known to the witness." *(Cassano v Hagstrom, supra,* at 646.) Detective Wagner stated, immediately after proffering his opinion, that "I have no factual documentation to back that up" and that his opinion was a "cumulative feeling."* It was, therefore, an abuse of discretion to allow Detective Wagner to testify as to his opinion of plaintiff's credibility, specifically, that plaintiff was lying, thereby depriving her of a fair trial.

We further find that Detective Wagner's testimony was improper as it sought to bolster the testimony of Ms. Mallette and Ms. Smith, defendant's two occurrence witnesses, while directly contradicting the truthfulness of plaintiff's account of the incident, thereby usurping the function of the trier of fact (*People v Ciaccio*, 47 NY2d 431; *People v Moore*, 216 AD2d 218).

The trial court further compounded its error of allowing the testimony of Detective Wagner by barring the testimony of plaintiff's experts, whose credentials in the field of rape trauma syndrome were unassailable. While we do not pass on the admissibility of Dr. Burgess' and Dr. Vasquez' planned testimony, the manifest unfairness in allowing Detective Wag-

---

* On redirect examination, Detective Wagner admitted that he never confronted plaintiff with his "feeling" or did anything further about it, other than to harbor it for presentation at trial. It was also brought out that Detective Wagner's opinion was never noted in police records or in his notes.

ner to testify as to the veracity of plaintiff's story, and, effectively, as to the viability of her case, while barring experts in the field from testifying as to whether plaintiff's behavioral patterns were inconsistent with someone who knew her attacker, in order to rebut the damaging effect of Detective Wagner's testimony, was also sufficiently prejudicial as to have deprived plaintiff of a fair trial.

Accordingly, the judgment of the Supreme Court, Bronx County (Barry Salman, J.), which was entered on September 8, 1994, after a jury trial, in favor of defendant, is unanimously reversed, on the law and the facts, without costs, and the matter is remanded to Supreme Court for a new trial.

MURPHY, P. J., ROSENBERGER, WALLACH and ASCH, JJ., concur.

Judgment, Supreme Court, Bronx County, entered September 8, 1994, reversed, on the law and the facts, without costs, and the matter remanded for a new trial.